250 N.J. Super. 296 (1991)
593 A.2d 1250
CAMERON & CAMERON, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
THE PLANNING BOARD OF THE TOWNSHIP OF WARREN, SOMERSET COUNTY, NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1991.
Decided August 5, 1991.
*297 Before Judges O'BRIEN, SCALERA and KEEFE.
Joseph E. Murray argued the cause for appellant (Murray, MacNeill & Tafaro, attorneys; Joseph E. Murray, of counsel; Jonathan E. Drill and Jay B. Bohn, on the brief).
John C. Phillips argued the cause for respondent (Buttermore, Mullen, Jeremiah & Phillips, attorneys; John C. Phillips, of counsel; John C. Phillips and Laura N. Anderson, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Cameron & Cameron, Inc. (Cameron), a developer, challenges conditions attached to a preliminary site plan approval granted by respondent Planning Board of the Township of Warren (Board). We reverse and remand.
Cameron owns Lot 11C in Block 322 on the Tax Map of Warren Township, which is triangular shaped and contains 1.18 acres. It is bounded on the north by Lot 11A, which has received preliminary site plan approval for the construction of a commercial office building known as the "Mark V" project. The premises are bounded on the east by Mountain Boulevard, a county road, and on the west by North Road, a township street. Cameron proposes to construct a small office building, a permitted use in the office/service zone in which the lot is located. The land to the northeast and south of the property is also zoned for office/service. The land to the west along North *298 Road is zoned residential. However, it is presently occupied by Bardy Farm, a busy retail nursery and produce market.
Cameron proposes to provide ingress to and egress from its property from North Road with no outlet to Mountain Boulevard, the same as the approved preliminary site plan for "Mark V." The existing North Road runs approximately one-half mile with a twenty-foot pavement where it abuts Cameron's property. Mimi Lane and Jessica Lane connect to North Road at its northerly end. These two lanes end in cul-de-sacs and have single-family residential homes and vacant land also zoned residential abutting them. All traffic leaving or entering North Road must pass the Cameron property on the east and the Bardy Farm on the west.
The Cameron development proposal calls for the installation of Belgian block curbing and storm drains and pipes along the full length of its property on the easterly side of North Road. Cameron also proposes to widen the paved portion of North Road, which will increase the overall pavement from twenty to thirty feet and will join the curb along the easterly side. The approval also requires installation of sidewalks along the full length of the Cameron property on the easterly side of North Road, to which Cameron does not object.
Preliminary site plan approval was granted by the Board subject to certain conditions. Cameron challenges paragraph 3e of the conditions in the Board's resolution which reads:
The plans shall be revised to the satisfaction of the Township Engineer in the following respects:
....
e. Cross-sections of North Road should be supplied and improvements including curb on the West side, two cross drains and a proper pavement crown and overlay should be shown.
In its brief, Cameron describes this condition as requiring it to
1) Repave the entire width of North Road from its intersection with Mountain Boulevard to the boundary line between the Cameron property and the Mark V property, approximately four hundred (400) feet of pavement;
2) Reconstruct the crown of North Road along the same distance;

*299 3) Install curbing along the westerly side of North Road, i.e., along the approximately four hundred fifty (450) feet of the road which abuts the Bardy Farm property; and
4) Install two cross drains in the westerly side of the road to pick up and dispose of water run-off originating from the Bardy Farm property.
Cameron contends these improvements are "offsite" or "off-tract" improvements and not "on-tract" improvements as found by the Board. Thus, it contends the provisions of N.J.S.A. 40:55D-42 of the Municipal Land Use Law (MLUL) and section 15-15 of the Off-tract Improvements section of the Warren Township Land Development Ordinance are applicable and should have governed the Board's consideration of the issue.
Cameron's complaint in lieu of prerogative writs asserts that the conditions imposed are arbitrary and unreasonable and, if such improvements are necessitated or required by its proposed construction on its property, other property is benefitted and thus Cameron should only be obliged to pay its proportionate or pro rata share pursuant to N.J.S.A. 40:55D-42 and section 15-15 of the township ordinance.
In its resolution granting preliminary site plan approval, the Board found that Cameron's engineer
agreed with the Board that curbing on the westerly side [of North Road] would help to stabilize the pavement on that edge and that virtually all traffic from the site would use the westerly side of North Road. He also acknowledged that curbing helps to control traffic and prevent damage to lands abutting the road.
The Board further found,
The dispute between the Board and the Applicant relates to the curbing on the western edge of the road, catch basins and cross drains, and the extent of pavement required. The Board finds that the Applicant's proposal to pave to the middle of the road will create a dangerous condition. Based upon the input of the Township Engineer, the Board concludes that a proper crown on the East side and the related paving will alter the current drainage pattern which the Board finds from the testimony and the members' own observation currently crosses the road in several places. Changing this pattern will result in a flow of water along the western edge of the road. To control this flow, it is necessary to install curbing and drainage.
The Board also concludes, based upon the advice of its attorney, that these improvements are on[-]tract improvements being on a portion of the right-of-way adjacent to the site.

*300 Lastly, the Board concludes that the cost of the improvements of curbing and drainage are not unreasonable given the nature of the application, it being an office facility in a prime location and this project appearing to generate significantly more traffic than currently exists on North Road (which is a residential road with no outlet). Since the Applicant must extend any new paving significantly past the center line of the existing road to create a proper crown and safe condition on the easterly side, any additional pavement is negligible.
Based upon this premise, the Board imposed the condition about which Cameron complains.
After a hearing on October 5, 1990, the Law Division found sufficient credible evidence to support the Board's determination that the improvements in question are required and necessitated by the development proposed by Cameron. The order for judgment specifically concludes:
IT IS FURTHER ORDERED AND DETERMINED that the improvements in question are "on-tract" improvements the cost of which are not subject to apportionment under either the municipal ordinances or the provisions of the Municipal Land Use Law.
The court dismissed Cameron's complaint and it appeals.
In reaching his conclusion, the trial judge acknowledged the existence of a dispute between Cameron and the Board as to whether Cameron's proposed improvements to the east side of North Road would result in a sheet flow of water to the west side of North Road in front of Bardy Farms. Cameron's engineer had testified that
The water  as you can see the contours  the roadway is crowned at the top and then starts crowing across. So without physically  you know, watching the water flow on a rainstorm I think most of it is contained on the westerly side. There could be to some degree some water flowing across  sheet draining across the roadway to our side. If that happens, naturally it's there to be collected by the storm drain.
The Board's attorney pointed to other sections of the transcript of the hearing before the Board on October 23, 1989, to support its contention that the addition of seven to ten feet of paving on the east side of North Road, coupled with the installation of curbing and drainage facilities, would in some way result in water, presently flowing from west to east to flow from east to west, thereby requiring the improvements to the west side of *301 North Road upon which preliminary site plan approval was conditioned.
The trial judge found that the record "is minimally adequate to support the Board's determination regarding the water flow and traffic conditions; that therefore it is entitled to a presumption of validity." While our reading of the transcript does not support that finding, we will accept for purposes of our decision that we are bound by the Board's decision on that issue, albeit it has only "minimal support" in the record.
In our view, the significant finding by the trial judge in support of his decision that N.J.S.A. 40:55D-42 and section 15-15 of the Township ordinance are inapplicable is that the improvements are
on-tract improvements, on-site improvements, ... and ... the language in Amato supports the conclusion that these are not off-tract improvements.
In reaching this conclusion the trial judge relied upon our decision in Amato v. Randolph Tp. Planning Bd., 188 N.J. Super. 439, 457 A.2d 1188 (App.Div. 1982). We disagree with the trial judge's conclusion.
The initial question is whether the improvements Cameron is required to make on the westerly side of North Road are "on-tract" or "on-site" as the Board found on the advice of its counsel and as the trial judge found. That finding forms the predicate for the trial judge's conclusion that the apportionment provisions of N.J.S.A. 40:55D-42 and section 15-15 of the Township ordinance do not apply to those improvements.
There is considerable confusion as to the meaning of these terms. They are defined in the MLUL as follows:
"Offsite" means located outside the lot lines of the lot in question but within the property (of which the lot is a part) which is the subject of a development application or contiguous portion of a street or right-of-way.
"Off-tract" means not located on the property which is the subject of a development application nor on a contiguous portion of a street or right-of-way.
"Onsite" means located on the lot in question.
"On-tract" means located on the property which is the subject of a development application or on a contiguous portion of a street or right-of-way.
*302 N.J.S.A. 40:55D-5. Although the title to N.J.S.A. 40:55D-42 concerning contribution for certain improvements uses the words "off-tract," the body of this section uses the words "located outside the property limits of the subdivision or development but necessitated or required by construction or improvements within such subdivision or development." Thus the title to this section appears to contradict the body of this section since "located outside the property limits" seems to be less inclusive than "not located on the property which is the subject of a development application nor on a contiguous portion of a street or right-of-way" as "off-tract" is defined in N.J.S.A. 40:55D-5.[1]
It is well established that the title cannot control the plain words of a statute. City of Atlantic City v. County of Atlantic, 193 N.J. Super. 583, 586, 475 A.2d 616 (App.Div. 1984). Although the title is part of the act, it may not be used to create an ambiguity if the statute's body is clear. N. Singer, 2A Sutherland Statutory Construction § 47.03 at 121 (4th ed. 1984); Swede v. City of Clifton, 39 N.J. Super. 366, 377-378, 121 A.2d 43 (App.Div.), aff'd 22 N.J. 303, 125 A.2d 865 (1956). Furthermore, N.J.S.A. 40:55D-3 provides that the definitions contained in N.J.S.A. 40:55D-3, 4, 5, 6 and 7 apply "unless the context clearly indicates a different meaning."
The legislative history for N.J.S.A. 40:55D-42 and the MLUL in general do not clearly establish the legislative intent, because the terms offsite and off-tract are both used, without discussion of their intended meanings. See Sponsor Statement to SB3054 (later codified as L. 1975, c. 291) at 67, stating that one of the bill's highlights was "[m]aking provisions for offsite *303 improvements" and Senate, County and Municipal Government Committee Statement to SB3054 (later codified as L. 1975, c. 291) at 4, stating that the bill "[a]uthorizes off-tract dedications for ... street improvements and provides standards for such requirements." At a public hearing before the Senate, County and Municipal Government Committee, witness Harvey S. Moskowitz, testifying as planning consultant to Morris Township, criticized the definitions of "offsite," "off-tract," "onsite" and "on-tract" as vague and unclear. Public Hearing before Senate, County and Municipal Government Committee on Senate Bill No. 3054, April 3, 1975, at 48.
N.J.S.A. 40:55D-42 codified pre-MLUL decisions which held that a developer may be compelled to pay only "that portion of the cost which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision." Holmdel Builders Ass'n v. Holmdel Tp., 232 N.J. Super. 182, 197, 556 A.2d 1236 (App.Div. 1989), aff'd in part, rev'd in part, 121 N.J. 550, 583 A.2d 277 (1990) (citing Longridge Builders, Inc. v. Planning Bd. of Princeton Tp., 52 N.J. 348, 350, 245 A.2d 336 (1968); Divan Builders, Inc. v. Planning Bd. of Tp. of Wayne, 66 N.J. 582, 600, 334 A.2d 30 (1975); Brazer v. Borough of Mountainside, 55 N.J. 456, 262 A.2d 857 (1970)); see also Baltica Const. v. Planning Bd., 222 N.J. Super. 428, 433, 537 A.2d 319 (App.Div. 1988). Any further impositions would be "impermissible exactions." Holmdel Builders, supra, 232 N.J. Super. at 198, 556 A.2d 1236. Because the Legislature is presumed to have had knowledge of these cases when it passed the MLUL and because the Legislature manifested no intent to expand significantly municipal power to require contribution for offsite improvements, we must construe N.J.S.A. 40:55D-42 in a manner consistent with the rationale set forth in these decisions. New Jersey Builders Ass'n v. Bernards Tp., 108 N.J. 223, 236-237, 528 A.2d 555 (1987).
We conclude that N.J.S.A. 40:55D-42 and section 15-15 of the Warren Township ordinance apply to that portion of the westerly side of North Road, which the Board required Cameron to *304 improve at its sole cost as a condition to preliminary site plan approval, which we find to be located "outside the property limits" of the development.
N.J.S.A. 40:55D-42 provides in pertinent part:
The governing body may by ordinance adopt regulations requiring a developer, as a condition for approval of a subdivision or site plan, to pay his pro-rata share of the cost of providing only reasonable and necessary street improvements and water, sewerage and drainage facilities, and easements therefor, located outside the property limits of the subdivision or development but necessitated or required by construction or improvements within such subdivision or development.
Pursuant to the statute, Warren Township adopted section 15-15 which provides in pertinent part:
b. Where the planning board has determined by resolution the necessity of an off-tract improvement, it shall forward its recommendation together with the estimated cost of the off-tract improvement to the governing body of the Township of Warren.
The ordinance then sets forth the applicable standards to be applied in such circumstances.
We recognize that the ordinance uses the term "off-tract," whereas the enabling statute, N.J.S.A. 40:55D-42, in the body utilizes the words "located outside the property limits." We further recognize that the term "off-tract" as defined in the MLUL means "not located on the property which is the subject of a development application nor on a contiguous portion of a street or right-of-way." We further recognize that, if the developer, Cameron, owns the land underlying North Road to the center line subject to the public's easement, the land lying to the west of the center line might be construed as a "contiguous portion of a street or right-of-way."
The record does not indicate the status of the land underlying North Road or whether, in fact, Cameron may be construed as owning to the center line thereof. If the property limits of Cameron's property is the easterly side line of North Road, then the "contiguous portion of a street or right-of-way" could refer to that "portion" extending from its westerly property line to the center line of North Road. However, we *305 conclude it is not necessary to resolve this seeming conflict since N.J.S.A. 40:55D-42 clearly refers to reasonable and necessary street improvements, necessitated or required by Cameron's construction and improvement of its property which is located "outside the property limits of the ... development." Cameron has accepted that it is obliged to pay the entire cost of the improvements on the easterly side of North Road, apparently accepting the proposition that its "property limits" are to the center line of North Road, but contends it is only obliged to pay its pro-rata share of the cost of the improvements on the westerly side of North Road. We agree.
If we were to accept the Planning Board's conclusion, which the trial judge accepted, that the improvements to the westerly side of North Road are "necessitated or required" by the improvements Cameron has agreed to install on the easterly side of North Road, then under N.J.S.A. 40:55D-42 Cameron would be required to pay its pro-rata share of the improvements on the westerly side.
The trial judge reached his conclusion to the contrary based upon our language in Amato v. Randolph Tp. Planning Bd., supra, where we made a general finding referring to N.J.S.A. 40:55D-42 that
[a]lthough the section itself does not use the term `off-tract' but rather refers to improvements `located outside the property limits,' it is clear that the pro-rata cost sharing scheme provided thereby in respect of street improvements does not apply to a street contiguous to the subdivision and upon which it abuts.
Amato, supra, 188 N.J. Super. at 450-451, 457 A.2d 1188. We made this statement in reaching our determination that it was the planning board's exclusive jurisdiction as part of its subdivision review to condition subdivision approval. In concluding that the Amato subdivision was a "minor subdivision" we eliminated the language "the extension of any off-tract improvement the cost of which is to be prorated pursuant to section 30 of this act (C. 40:55D-42)" in defining a "minor subdivision." We thus reached the final conclusion,

*306 The street-improvement requirements of the planning board here, of which plaintiffs complain, relate to a street which is contiguous to and abuts the subdivision as a whole and does not extend beyond it. We are persuaded, therefore, that it does not constitute an off-tract improvement, that N.J.S.A. 40:55D-42 does not apply, and that the proposed subdivision is indeed minor.
Amato, supra, 188 N.J. Super. at 451, 457 A.2d 1188. That conclusion is inapposite to the conclusion we reach here.
In the Amato case, the Amatos owned a two-acre parcel of land bounded on the south by Sussex Turnpike, a county road. It was bounded on the east by Weimars Lane, at the time a dirt path, but shown on the township master plan as a sixty-foot wide street connecting Sussex Turnpike and a parallel county road some unspecified distance to the north. We specifically noted that the record did not indicate the status of title to Weimars Lane, but stated, "[i]t appears, however, to be a paper street, long since dedicated but never accepted." Id. at 442, 457 A.2d 1188.
The condition imposed by the Planning Board in Amato required the Amatos to dedicate a strip running from Sussex Turnpike north to the rear boundary line of the rear lot, thirty feet in width measured from the center line of Weimars Lane to their property line. The Amatos were also required to install on Weimars Lane "a full section of paved township road" running from Sussex Turnpike to the rear lot line "for a width of 20 feet and shall provide curbs and drainage, all of which shall be in accordance with the township ordinances and shall be approved by the township engineer." Id. at 445, 457 A.2d 1188.
Thus, the land lying between the Weimars' easterly property line and the center line of the sixty-foot-wide Weimars Lane was considered by us to be contiguous to the Amato property and therefore not "off-tract." This is comparable to the land lying between the west property line of the Cameron property and the center line of North Road which Cameron has agreed to improve with additional pavement, curbs, sidewalks and drainage at its sole expense. In Amato, we were not referring to *307 the easterly thirty feet of Weimars Lane lying to the east of the center line of the sixty-foot right of way. That would be comparable to the westerly side of North Road between its center line and the easterly property line of Bardy Farms, which the Board on advice of its counsel and the trial judge concluded to be contiguous.
We thus remand the matter to the Board for additional findings of fact upon which it concluded that the construction proposed by Cameron on its property or on the easterly portion of North Road contiguous to its property necessitates or requires improvements to be made on the westerly side of North Road. In making this finding the Board shall specifically identify the testimony presented before it upon which such a finding was premised, specifying the name of the witness or witnesses and the testimony given. If such a finding and conclusion is made by the Board, it shall then comply with the provisions of section 15-15 of the Warren Township ordinance requiring it to forward its recommendations to the governing body of the Township of Warren so the amount of contribution to be made by Cameron to the improvements on the westerly side of North Road may be calculated.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] When the Legislature used the words "contiguous portion of a street or right-of-way" it did not clarify what portion it was referring to and what it intended by the use of the word "portion." It would seem that the word "portion" refers to the land lying under the street or right of way from the "property line" to the center line of the contiguous street or right of way, which may be owned by the adjoining property owner subject to the public easement.