222 N.J. Super. 428 (1988)
537 A.2d 319
BALTICA CONSTRUCTION CO., INC., PLAINTIFF-APPELLANT,
v.
PLANNING BOARD OF THE TOWNSHIP OF FRANKLIN, MAYOR & COUNCIL OF FRANKLIN TOWNSHIP, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 26, 1987.
Decided February 5, 1988.
*429 Before Judges HAVEY and STERN.
Francis P. Linnus, attorney for appellant (Francis P. Linnus and Carl Peer on the briefs).
William T. Cooper, attorney for respondent Planning Board of the Township of Franklin (William T. Cooper on the brief).
McGimpsey & Cafferty, attorneys for respondent Mayor and Council of Franklin Township; (Thomas J. Cafferty on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
Plaintiff Baltica Construction Company, Inc., was granted a ten-lot subdivision approval by defendant planning board of the Township of Franklin (board). As a condition to approval the board required plaintiff to bear the entire cost of installing an off-site water line. Plaintiff protested the condition and instituted the present suit to compel the board to allocate plaintiff's pro-rata share of the improvement cost. The trial judge dismissed the complaint, concluding that plaintiff was precluded from recovering the cost in excess of its pro-rata share because it installed the improvement before judicial resolution of its challenge to the board's action. We now reverse. We conclude that under N.J.S.A. 40:55D-42, a developer is not barred from recovery if it protests the planning board's refusal to allocate costs and institutes suit within one year from the time it "pays" *430 for the improvement by installing it. We therefore remand to the Law Division for further proceedings.
Plaintiff was granted subdivision approval at the board's meeting of October 16, 1985. As a condition to the approval, plaintiff was required to install a water line along Elizabeth Avenue in Franklin Township approximately 1,900 feet from the subdivision to an existing municipal water main at Amwell Road.[1] While plaintiff was prepared to install individual wells, it agreed at the October 16, 1985 meeting to extend the water line, providing the board allocate the cost of installation in a manner that plaintiff bear only its pro-rata share. The board refused to make a pro-rata allocation.
On November 6, 1985 the municipal engineer advised the board that the water line should be 16 inches as called for by the township's Water Master Plan, "with an agreement for reimbursement by the Township as others connect to the line." The township's director of planning instructed the board that a 16-inch pipe was necessary "to accommodate future development along the entire length of [Elizabeth Avenue]." At a November 20, 1985 board meeting, plaintiff presented evidence that an 8-inch pipe was adequate to service the subdivision. Nevertheless, plaintiff accepted the condition that a 16-inch pipe be installed but again insisted the board adhere to the township's off-site improvement ordinance which required the board to make specific findings as to whether the 16-inch pipe would benefit properties other than the subdivision and, if so, to fix plaintiff's pro-rata share of the improvement cost. No further action on plaintiff's request was taken by the board. It apparently was the board's view that pro-rata allocation and *431 reimbursement to plaintiff were decisions to be made by the mayor and council.
On December 3, 1985, prior to construction of the line, plaintiff instituted the present action against the board seeking to compel the board to allocate the cost of the water line. By letters to the mayor and council dated December 18, 1985 and January 2, 1986, plaintiff requested reimbursement for the excess cost. After the request was denied, plaintiff amended its complaint on February 28, 1986 adding the mayor and council as party defendants. Sometime in February 1986, plaintiff began construction of the line.
At the bench trial, plaintiff produced evidence that a 6-inch or 8-inch pipe was adequate to serve the subdivision, that the cost differential between an 8-inch and 16-inch pipe was approximately $37,500, and that the ten-lot subdivision would utilize only 6.25 percent of the total flow from the 16-inch pipe. Plaintiff also established that existing one-acre zoning in the area would permit 49 buildable lots contiguous to the water line from the subdivision to Amwell Road, all capable of tying into the line. According to plaintiff, its subdivision represented only 24.85 percent of the total land abutting the water line. The township engineer testified the properties abutting the line could tie into the line but were not required to do so because the township had no mandatory tie-in ordinance. The engineer also noted that, in his view, a 10-inch pipe was necessary for fire-fighting purposes.
Robert Paulus, defendants' real estate appraiser, testified that, in his opinion, the properties abutting the water line did not increase in value by virtue of the water-line installation. He stated he attempted without success to find sales within the township in order to compare values of lots with and without public water. He therefore premised his opinion primarily on the fact that tax assessors in adjoining municipalities had advised him they did not increase tax assessments on lands having public water.
*432 The trial judge found plaintiff's subdivision could have been serviced with an 8-inch line. He nevertheless entered judgment for defendants, concluding that any benefits to adjacent landowners resulting from the water-line installation "[are] too speculative to allow a determination that plaintiff is entitled to a reimbursement from them." The judge also concluded that plaintiff was precluded from recovering the excess cost of the improvement because it did not wait for judicial resolution of the dispute before installing the improvement.
Plaintiff first contends that the 16-inch water line mandated by the board exceeded that which was necessitated by its ten-lot subdivision, and thus it is entitled to recover the cost of the line in excess of its pro-rata share.
It is now well-settled that the expense of installing off-site improvements may be imposed upon a developer as a condition to subdivision approval, including the installation of water and sewer lines. N.J. Bldrs. Ass'n v. Bernards Tp., 108 N.J. 223, 236 (1987); Divan Builders v. Planning Bd. Tp. of Wayne, 66 N.J. 582, 596 (1975); Ellis v. Larchmont Pharmacy Plaza, Inc., 208 N.J. Super. 359, 364 (App.Div. 1986). The Municipal Land Use Law (MLUL) expressly authorizes the governing body, by ordinance, to impose such costs. See N.J.S.A. 40:55D-42. However, the cost assessment shall be limited to the developer's:
... pro-rata share of the cost of providing only reasonable and necessary ... water ... facilities... located outside the property limits of the subdivision ... but necessitated or required by construction or improvements within such subdivision.... [Id.]
The off-site ordinance must establish:
... fair and reasonable standards to determine the proportionate or pro-rata amount of the cost of such facilities that shall be borne by each developer or owner within a related and common area, which standards shall not be altered subsequent to preliminary approval. [Id.]
Thus, imposition of the cost of improvements on a developer "must be accompanied by provisions for partial reimbursement if the improvement specially benefits property other than that of the developer." Ellis, supra, 208 N.J. Super. at 364.
*433 N.J.S.A. 40:55D-42 is a codification of pre-MLUL decisional law which addressed a municipality's unexpressed power to impose off-site improvement costs upon a developer under the Municipal Planning Act of 1953, specifically N.J.S.A. 40:55-1.21, now repealed. See Divan Builders, supra, 66 N.J. at 596; Deerfield Estates, Inc. v. Tp. of East Brunswick, 60 N.J. 115, 122-123 (1972); Longridge Builders, Inc. v. Planning Bd. of Princeton Tp., 52 N.J. 348, 350 (1968). The common theme presented by each case is stated cogently in Longridge Builders, Inc.:
It is clear to us that, assuming off-site improvements could be required of a subdivider, the subdivider could be compelled only to bear that portion of the cost which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision. It would be impermissible to saddle the developer with the full cost where other property owners receive a special benefit from the improvement. [52 N.J. at 350; emphasis supplied].
As the court expressed in Divan Builders, the reason for the nexus requirement is clear: "[b]eyond that, Planning Board impositions, although purportedly authorized by the Planning Act or the local ordinance, amount to impermissible exactions." 66 N.J. at 600, quoting Brazer v. Borough of Mountainside, 55 N.J. 456, 466 (1970).
We have found no pre or post-MLUL case defining with specificity the manner by which a developer's pro-rata share is to be determined. Longridge provides some guidance in holding that a subdivider's pro-rata share must "bear[] a rational nexus to the needs created by, and benefits conferred upon, the subdivision." 52 N.J. at 350 (emphasis supplied). Reference to "needs created" suggests that the municipality must measure the capacity required to service the subdivision against the gross capacity provided by the off-site improvement. Divan Builders, by its reference to Ridgewood Country Club v. Borough of Paramus, 55 N.J. 62 (1969), implies that increases in land value attributable to construction of the off-site improvement is significant in deciding the "special benefit" conferred upon the affected landowners. Divan Builders, supra, 66 N.J. at 600-601. Divan Builders adds that "[c]onsideration *434 may also be given to the fact that the need for the off-site improvement was created by the proposed subdivision." Id. at 601. Thus, in determining a developer's pro-rata share, the board may consider the fact that but for the subdivision, the improvement may not have been installed at all.
In our view, the trial judge's finding that any benefits accruing to properties abutting the water line are "too speculative to allow a determination that plaintiff is entitled to a reimbursement from them"[2] is not supported by substantial credible evidence in the record. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974). Plaintiff's subdivision requires only 6.25 percent of the total flow from the 16-inch pipe. The subdivision accounts for only 24.85 percent of the total land abutting the off-site water line, and the cost differential between an 8-inch and 16-inch line approximates $37,500. Clearly, imposition of the entire cost of the 16-inch line does not "bear[] a rational nexus to the needs created by, and benefits conferred upon, the subdivision," Longridge Builders, Inc., supra, 52 N.J. at 350, even considering the fact that the need for the line was created by the proposed subdivision. See Divan Builders, supra, 66 N.J. at 601.
We also conclude there are clear benefits accruing to the properties along Elizabeth Avenue by virtue of the water-line installation. Both the township's planner and engineer acknowledged that the purpose of installing a 16-inch pipe was to provide sufficient capacity to service "future development" along Elizabeth Avenue. The homeowners abutting the line now have the option of tying into the line. The vacant landowners may now develop their land and connect to the line *435 without incurring the expense of either installing wells or constructing a water line themselves.
Presumably, the trial judge relied on the testimony of the township's real estate appraiser, Robert A. Paulus, in concluding that the properties abutting the water line had not been benefited. Paulus' opinion that there had been no property value increase by virtue of the water-line installation was based primarily on the hearsay statements of tax assessors in adjoining townships that it was not their "policy" to increase tax assessments when water lines are installed. Paulus conceded there were no comparable sales within Franklin Township to permit a comparison of values of properties with and without water service. The tax assessors as well acknowledged no such sales existed in their municipalities. We therefore question the competence of Paulus' opinion and in any event, the weight to be given to it, if considered at all. Further, our Supreme Court has held that the availability of a municipal authority's sewer system results in special benefit to and enhances the value of property to be serviced, whether properties use the system or not. See Airwick Industries, Inc. v. Carlstadt Sewerage Auth., 57 N.J. 107, 120-121 (1970), app. dis. 402 U.S. 967, 91 S.Ct. 1666, 29 L.Ed.2d 132 (1971).
Moreover, the township's own off-site improvement ordinance properly provides that "any other benefits conferred upon" the properties, besides property value increase, shall also be considered in a pro-rata allocation. Paulus acknowledged that the installed fire hydrants along the water line will increase fire protection, reduce insurance rates, and provide the properties with immediate access to potable, public water, if wells become polluted. Both the trial judge and board failed to consider these "other benefits." Clearly, the plaintiff is entitled to a pro-rata allocation of costs and to recover from the township the cost in excess of its pro-rata share.
The next issue is whether plaintiff is precluded from seeking relief because it installed the water line before judicial *436 resolution of its challenge to defendants' refusal to allocate costs. In finding plaintiff was precluded, the trial judge relied on the following statement in Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 430-431 (1958):
It is asserted that the plaintiff's installation of the mains followed by a suit for recovery of the costs has the effect of circumventing the appropriations statutes. R.S. 40:2-29, R.S. 40:50-6, and the bidding laws, R.S. 40:50-1; R.S. 40:62-63. We recognize that the course pursued is pregnant with possibilities for abuse and that the developer will not ordinarily be permitted, after demand and refusal, to install the improvement and then bring an action for damages.
The trial judge also found that N.J.S.A. 40:55D-42, which permits a developer who pays the amount determined as his pro-rata share under protest to seek judicial redress within one year, relates only "to situations in which there has been an agreement to allocate costs between the developer and the municipality," and thus did not apply here. We disagree with the trial judge on both points.
We are not convinced that the expression of caution in Lake Intervale Homes is dispositive. Firstly, the statement is dictum since the Supreme Court upheld the developer's right to challenge the imposition of costs upon it of a water main extension because the municipality had agreed that resolution of the issue was to be preserved for later settlement or suit. Id. at 431. Secondly, here plaintiff did not "install the improvement and then bring an action for damages." Id. Plaintiff protested the board's refusal to allocate the cost of the improvement from the outset of the hearings and instituted this prerogative writs action before beginning construction of the water line. This is not a case where the developer "voluntarily installed the mains at its own expense, without protest." Yardville Estates, Inc. v. Trenton, 66 N.J. Super. 51, 62 (App. Div. 1961) (emphasis supplied). See also Woodside Homes, Inc. v. Morristown, 26 N.J. 529, 544 (1958).
Thirdly, since Lake Intervale Homes, our Supreme Court has recognized that a developer's accession to a public body's wrongful demand will not necessarily bar judicial intervention. For example, in West Park Ave., Inc. v. Ocean Tp., 48 N.J. 122, *437 129-130 (1966), the court held that a subdivider, required by municipal officials to pay $300 per lot to the board of education, was not barred from recovering the payments made under duress. This species of duress, sometimes referred to as "business compulsion," is exercised when payments are induced by the wrongful pressure of the payee and the payor has no immediate and adequate remedy in the courts to resist them. Id. at 129; see also Continental Bank of Pa. v. Barclay Riding Acad., 93 N.J. 153 (1983), cert. den. sub nom. Barclay Equestrian Center, Inc. v. Continental Bank of Pennsylvania, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 684 (1983).
Thus, in S.S. & O. Corp. v. Tp. of Bernards Sewerage Auth., 62 N.J. 369, 386-387 (1973), the "business compulsion" doctrine was successfully invoked where a developer challenged a contract with a sewerage authority after the developer had constructed most of a sewer system required under the contract because the authority had withheld permits until the developer agreed to provide a corporate resolution stating that it acted voluntarily and without compulsion or coercion.
Most instructive is Divan Builders, where the court permitted the developer to recover "as a payment made under duress, cf. West Park Ave., Inc. v. Ocean Tp., 48 N.J. 122 (1966), so much of the [off-site improvement cost] it paid as exceeds the portion of the cost of the improvement fairly allocable to it...." Divan Builders, supra, 66 N.J. at 603-604 (emphasis supplied). As we understand Divan Builders, it made little difference whether the improvement is installed before or after judicial resolution of the developer's claim of duress. The court stated that if the off-site improvement is to be constructed by the developer, it must pay to the municipality as a cash bond "an amount equal to the estimated cost of the improvement." Id. at 602. The court then instructed:
Further, since the amounts are only estimated amounts, they should be redetermined once the improvement is completed to the end that the subdivider will be required to pay his appropriate and only his appropriate share of the cost thereof. If the municipality and the subdivider cannot agree with *438 respect thereto, the dispute will have to be decided in a judicial proceeding or proceedings. [Id. at 603; emphasis supplied].
Thus, Divan Builders expressly recognizes that construction of the improvement, under protest, will not necessarily bar a subsequent judicial proceeding to fix the subdivider's appropriate share of the improvement cost.
We also reject the trial judge's reading of N.J.S.A. 40:55D-42. That section, in applicable part, provides:
Where a developer pays the amount determined as his pro-rata share under protest he shall institute legal action within 1 year of such payment in order to preserve the right to a judicial determination as to the fairness and reasonableness of such amount. [N.J.S.A. 40:55D-42].
We are not quite sure what the judge intended when he said the provision is applicable only where "there has been an agreement to allocate cost between the developer and the municipality." If the parties reach an agreement, there is no reason for the developer to sue.
The judge also suggested in his findings that the statute applies only to the case where the township installs the improvement and requires contribution from the developer. We read N.J.S.A. 40:55D-42 as intending to give the developer who "pays" by constructing the improvement the same right to institute a suit within one year as the developer who "pays" a determined amount to the municipality, providing the developer protests in a timely fashion. When the Legislature enacted N.J.S.A. 40:55D-42, "it is presumed to have had knowledge of the relevant judicial decisions." N.J. Bldrs. Ass'n., supra, 108 N.J. at 236. Thus, we presume the Legislature intended to adopt the law as it evolved since Lake Intervale Homes, as expressed in Divan Builders on the eve of the passage of the MLUL, which makes no distinction between the developer who installs the improvement and the one who pays the municipality for it.
Further, the underlying policy expressed in the pre-MLUL decisions and in the MLUL itself (that the developer pay only that portion of the cost that bears a rational nexus to the *439 subdivision's needs and benefits), applies equally to both the developer who installs the improvement and the one who pays for it. There is no reason in logic or equity to provide a judicial remedy to a developer who pays a determined amount to the municipality, and to deprive judicial relief to the developer who pays a like amount by installing the improvement because he is required to do so by the planning board. Indeed, it may be argued the municipality benefits from the developer's installation of the line since the municipality need not incur the cost and effort of public bidding. Here, for example, the township engineer advised the board that plaintiff could construct the line for about 30 percent less than the township.
The trial judge reasoned that the purpose of imposing conditions to subdivision approvals would be frustrated if developers install the improvements, and thereafter seek a judicial determination of cost allocation "after the fact." We do not agree. The issue of pro-rata allocation is just as viable whether the line is installed before or after judicial proceedings are completed. Moreover, to preclude recovery allows the board to ignore its mandate to allocate off-site costs. If the one-year time period applies only to the developer who pays the cost to the municipality, the board could require installation by the developer in every case, knowing the economic realities facing the developer will no doubt compel it to accede to the unlawful condition. We do not consider a requirement that the board adhere to its off-site improvement ordinance at the time of the subdivision application as frustrating the board's power to impose conditions.
The municipality argues that to permit a developer to recover after it constructs the off-site improvement may create uncertainty in the municipality's budgeting for capital improvements. This argument is answered at least in part by the measure of repose provided by the one-year time limitation under N.J.S.A. 40:55D-42. Further, the ultimate issue here is what pro-rata share plaintiff was obligated to pay for the cost of the 16-inch pipe. Given that issue, there is no sound reason why the *440 installation of that pipe should have been delayed pending litigation. The municipality will have to pay the excess amount if plaintiff prevails whether the improvement is installed before or after the judicial proceeding is completed. Finally, the argument ignores the fact that to require the developer to delay development of the tract for years pending final judicial determination, or, as the municipality suggests, until it decides to extend the line itself, may be no remedy at all.
A fair reading of N.J.S.A. 40:55D-42 satisfies us that it was not intended to permit a judicial remedy only when there has been "an agreement to allocate costs," or when the developer has paid a determined amount to the municipality for the improvement. When a developer is required to install the improvement and it protests the planning board's refusal to make a pro-rata allocation, the developer has one year from the date it "pays" for the improvement, by commencing its installation, to seek judicial relief. Therefore, plaintiff's suit here was not barred since it instituted suit even before installation of the water line was commenced.
We reverse and remand to the Law Division for further proceedings in accordance with this opinion. In that regard we note plaintiff's counsel represented to the trial judge that the subdivision lots have been sold but the costs of the improvement had not been passed on to the purchasers. However, no evidence as to that fact was adduced during trial. Accordingly, on remand, if it is determined that all or part of the costs have been passed on to the purchasers of the lots, any recovery by plaintiff should justly be placed in trust under suitable directions on behalf of the purchasers. See Colonial Oaks West, Inc. v. Tp. of E. Brunswick, 61 N.J. 560, 575 (1972). We leave it to the discretion of the trial judge to decide whether the parties may present additional proofs as to all issues.
Reversed and remanded to the Law Division for further proceedings. We do not retain jurisdiction.
NOTES
[1] There is some question, left unresolved by the trial judge, as to whether a portion of the water line is contiguous to plaintiff's subdivision. A developer's entitlement to pro-rata allocation of improvement costs does not apply to that part of the improvement contiguous to the subdivision. See N.J.S.A. 40:55D-5; see also Amato v. Randolph Tp. Planning Bd., 188 N.J. Super. 439, 451 (App.Div. 1982). This issue must be resolved on remand.
[2] Plaintiff has not, nor could it, seek reimbursement from the abutting property owners, as the trial judge suggests. Plaintiff's claim is properly made to the board to apportion costs among the properties benefited and to the governing body to reimburse plaintiff of its cost in excess of its fair share. See Ellis, supra, 208 N.J. Super. at 365.