253 N.J. Super. 109 (1992)
601 A.2d 229
ALLEN VRABEL AND CHARLES FORNAL, PLAINTIFFS-APPELLANTS,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF SAYREVILLE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1991.
Decided January 13, 1992.
*111 Before Judges ANTELL, LONG and BAIME.
Dennis J. Haag argued the cause for appellants (Dennis J. Haag on the brief).
Douglas J. Walsh argued the cause for respondents (Casper P. Boehm, Jr., attorney, Casper P. Boehm, Jr. and Douglas J. Walsh of counsel, Douglas J. Walsh on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
*112 The novel question presented by this appeal is whether a municipality may require a single lot owner to bear the full expense of extensive off-site improvements as a condition to the issuance of a building permit. Plaintiffs, individual lot owners whose contiguous properties abutted an unimproved street, were required by the Borough of Sayreville to install water and sewer extensions along the entire road. The extensions were to be connected to existing lines beneath a sidewalk that bordered an intersecting county roadway a substantial distance from plaintiffs' properties. Plaintiffs were additionally required to pave portions of the street and make other road improvements. While agreeing to bear the initial cost of these improvements, plaintiffs filed a complaint in the Chancery Division, seeking to compel the Borough to enter a "fair share" agreement in which they would be responsible for their pro rata portion of the expense and other lot owners would be assessed in accordance with the direct benefit they received. The Chancery Division judge found no statutory authority permitting a municipality to enter into a "fair share" agreement with an individual lot owner. Consequently, judgment was entered in favor of the Borough. The effect of the Chancery Division's judgment is to compel plaintiffs to bear the full expense of the improvements while other similarly situated property owners will receive a direct benefit at no cost. We reverse.

I.
The salient facts are not in dispute. In 1987, the Borough conducted a public land auction in which plaintiffs purchased individual lots abutting Jefferson Avenue, an unimproved road. Among other things, the resolution authorizing the sale provided that the Borough would "not assume any responsibility for opening streets or furnishing utilities." Another section of the resolution stated that "all information concerning existing [and] future water and sewer lines [could] be obtained ... from the *113 Borough engineer." On file in the Borough engineer's office was a report which provided that "[u]tilities and roadway must be installed" with regard to the properties to be sold at the auction.
At the time of the sale, Jefferson Avenue was an unimproved street one block in length. At one end, the street bordered a Borough park. The other end of the street opened into a "T" intersection with a county artery, Washington Road. A single family house, the "Bailey residence," was built on an improved lot on the corner of Jefferson Avenue and Washington Road. The lot purchased by plaintiff Allen Vrabel was adjacent to the Bailey residence. Plaintiff Charles Fornal's property was next to that of Vrabel. At the time plaintiffs purchased their properties, all lots on the other side of the street were unimproved. Subsequently, a one-family house was constructed across the street from the Bailey residence. We digress to note that the owner of this property was permitted to connect to the water and sewer lines installed by plaintiffs.
Jefferson Avenue was paved up to the border of Bailey's property. Under N.J.S.A. 40:55D-35, plaintiffs were required to improve the street from the end of Bailey's lot. In addition, municipal ordinances required plaintiffs to connect to the Borough's water and sewer lines. Individual wells and septic tanks are not permitted in the Borough. At trial, plaintiffs testified that after purchasing their properties they became aware that it was not possible to make a connection to water and sewer lines at the location where the "blacktop began," i.e., the boundary of Bailey's property. Instead, the existing water and sewer lines ran along the opposite side of Washington Road. It became apparent that the only method for installing the water and sewer lines would be to improve the entire length of Jefferson Avenue, across the width of Washington Road and hook up to a connecting location beneath a sidewalk.
Plaintiffs made separate applications for building permits, but were informed that it was necessary to file plans prepared *114 by a licensed engineer. They were also advised by the Borough engineer that, although Jefferson Avenue was partially paved up to the southerly border of the Vrabel property, the adjacent roadway would have to be improved as a condition to receiving a building permit. Plaintiffs were told that they would be required to install water and sewer lines at least 12 feet below grade to connect with existing utilities.
Plaintiffs retained an engineer who prepared plans in accordance with these requirements. At the time, it was the policy of the Borough not to accept or dedicate streets by a formal resolution, but to request performance bonds prior to commencement of construction. At the conclusion of construction, the Borough's practice was to accept the improved street. In this case, however, the Borough waived the requirement of a performance bond with the understanding that all items were to be completed prior to the issuance of certificates of occupancy. Plaintiffs complied with these conditions and, after inspection of the improvements, the Borough engineer issued the requisite certificates.
Plaintiffs spent $66,000 for the installation of the utility lines and the street improvements. On December 12, 1988, plaintiffs' attorney requested the Borough to take steps to require that four other lot owners whose properties were allegedly benefitted by the improvements, pay a fair share of the cost. The Borough officials refused, claiming that they lacked the requisite authority.
Plaintiffs thereafter instituted this action. Following a non-jury trial, the Chancery Division judge rendered an oral opinion in which she found that plaintiffs had constructive notice of the requirement mandating installation of improvements at their own expense. She also concluded that the municipality had no authority to grant a "fair share" agreement to an individual lot owner. While noting that the Municipal Land Use Law (N.J.S.A. 40:55D-1 to -129) empowers municipalities to require "developers" to pay their pro rata share of the cost of off-site *115 improvements as a condition for approval of a subdivision or site plan, see N.J.S.A. 40:55D-42, the judge observed that the statutory scheme is silent with respect to individual lot owners. The judge concluded that she was restricted from applying the statute because plaintiffs were not "developers" and construction of houses on their properties did not constitute a "development." The judge also found that although other owners of lots situated on Jefferson Avenue had the option of tying into the water and sewer lines installed by plaintiffs, no "special benefit" accrued to them. Based on these findings and conclusions, judgment was entered in favor of Sayreville.
For reasons which will become apparent later in our opinion, we address the questions presented in a slightly different order. We first consider whether a municipality may condition the issuance of a building permit on the owner's installation of off-site improvements without providing for partial reimbursement for benefits which accrue to other properties. We then address the question of whether plaintiffs had constructive notice that they would be required to bear the full expense of the off-site improvements demanded by the Borough.

II.
Initially, we hold that a municipality may not impose on an individual lot owner the full cost of off-site improvements that benefit other properties as a condition for obtaining a building permit. The property owner can be compelled to pay only that portion of the cost which bears a rational nexus to the needs created by and benefits conferred upon him. Imposition of the costs must be accompanied by provisions for partial reimbursement if the improvement benefits other properties.
We reach this conclusion notwithstanding the fact that N.J.S.A. 40:55D-42, which authorizes "fair share" agreements, is confined to conditions attached to "subdivision" or "site plan" approval. We agree with the Chancery Division judge that this statute does not explicitly refer to individual lot *116 owners who merely wish to construct houses or other structures on their properties. While we question the Chancery Division judge's conclusion that plaintiffs were not "developers" and the construction they proposed not "developments" under the broad definitions of those terms contained in N.J.S.A. 40:55D-4, we need not address that issue. The simple and overriding fact is that plaintiffs never applied for "subdivision" or "site plan" approval, nor were they required to do so under N.J.S.A. 40:55D-7. For this reason, the statutory proscription barring a municipality from charging more than the developer's "pro rata share" of the cost of off-site improvements as a condition to subdivision or site plan approval is not applicable here.
The Municipal Land Use Law is generally silent with respect to the nature and type of conditions a municipality may exact upon the issuance of a building permit. N.J.S.A. 40:55D-35 is an exception. That statute provides that "[n]o permit for the erection of any building or structure shall be issued unless the lot abuts a street giving access to such proposed building or structure." Ibid. In order to satisfy this requirement, a condition may be attached to the permit "assur[ing]" such "suitable improvement" in accordance with "standards and specifications for road improvements approved by the governing body." Ibid. N.J.S.A. 40:55D-35 is supplemented by N.J.S.A. 40:55D-36 which allows appeals to the board of adjustment where satisfaction of the statutory requirement "would entail practical difficulty or unnecessary hardship, or where the circumstances of the case do not require the building or structure to be related to a street." The board may "direct the issuance of a permit subject to conditions that will provide adequate access for firefighting equipment" and other emergency vehicles. N.J.S.A. 40:55D-36.
We have found no statute specifically dealing with the installation of sewer and water lines as a condition for the issuance of a permit. Of course, the municipality may undertake such a project at public expense. So too, extension of sewer and water *117 mains may be undertaken as a local improvement and the costs assessed against the owners of the properties benefitted pursuant to the procedures outlined in N.J.S.A. 40:56-1 to -64. If this course is chosen, the municipality is under a strict obligation to insure that the assessment charged to individual property owners is "not in excess of the benefits conferred." N.J.S.A. 40:56-19.
In short, our research discloses no statute, other than N.J.S.A. 40:55D-35 and 36, which specifically allows a municipality to condition the issuance of a building permit on the applicant's contribution to necessary off-site improvements. Although we have not discovered specific enabling legislation authorizing such a practice, we are convinced that this power can fairly be implied. We reach this conclusion for several reasons. First, our Constitution requires a liberal construction of any law which concerns municipal powers. N.J. Const. of 1947 art. IV, § VII, para. 11. Second, the practice of imposing conditions on the issuance of a building permit, if fairly administered pursuant to sound standards and criteria, fully comports with the important public policy concerns articulated by the Legislature in enacting the Municipal Land Use Law. See N.J.S.A. 40:55D-2. Third, there is significant precedent supporting such a conclusion. Long before the applicable statutory schemes made specific reference to the subject, New Jersey decisions had upheld the power of municipal and county planning boards to condition subdivision and site plan approval upon the installation of off-site improvements. See, e.g., Divan Builders v. Planning Bd. Tp. of Wayne, 66 N.J. 582, 595, 334 A.2d 30 (1975); Deerfield Estates v. Tp. of East Brunswick, 60 N.J. 115, 123-24, 286 A.2d 498 (1972); cf. Squires Gate v. County of Monmouth, 247 N.J. Super. 1, 8, 588 A.2d 824 (App.Div. 1991). In light of these decisions, it was not necessary for the Legislature to enact a provision expressly authorizing a municipality to condition the issuance of a building permit upon the applicant's installation of reasonable and necessary off-site improvements.
*118 While we recognize the authority of a municipality to exact such conditions, we stress that the metes and bounds of this power are narrowly circumscribed. In that respect, we are guided by a long line of decisions holding that a property owner can be compelled to bear only that portion of the cost which "bears a rational nexus to the needs created by, and benefits conferred," upon his property. Longridge Builders, Inc. v. Planning Bd. of Princeton Tp., 52 N.J. 348, 350, 245 A.2d 336 (1968); see also N.J. Bldrs. Ass'n v. Bernards Tp., 108 N.J. 223, 237, 528 A.2d 555 (1987); Divan Builders v. Planning Bd. Tp. of Wayne, 66 N.J. at 598, 334 A.2d 30; Deerfield Estates, Inc. v. Tp. of East Brunswick, 60 N.J. 115, 128, 286 A.2d 498 (1972); Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 443-44, 147 A.2d 28 (1958); Squires Gate v. County of Monmouth, 247 N.J. Super. at 9, 588 A.2d 824; Baltica Const. v. Planning Bd., 222 N.J. Super. 428, 432-33, 537 A.2d 319 (App.Div. 1988); Ellis v. Larchmont Pharmacy Plaza, Inc., 208 N.J. Super. 359, 364, 506 A.2d 22 (App.Div. 1986). The requirement of "reasonable nexus" is grounded on considerations of fundamental fairness and constitutional doctrine. Brazer v. Borough of Mountainside, 55 N.J. 456, 466, 262 A.2d 857 (1970). However phrased, equality of treatment is obviously the polestar of our decisions. Deerfield Estates, Inc. v. Tp. of East Brunswick, 60 N.J. at 128, 286 A.2d 498.
The conditions imposed by the Borough violated this well settled principle. As we noted earlier, the Borough could have employed one of a number of alternatives to achieve its objective. It could have paid for all installations and road improvements from general municipal funds, undertaken the projects as local improvements and assessed the costs to property owners benefitted, or compelled plaintiffs to pay all construction costs subject to recoupment in accordance with the terms of a generally applied formula. See Deerfield Estates, Inc. v. Tp. of East Brunswick, 60 N.J. at 132, 286 A.2d 498. What it may not do is impose the full cost on plaintiffs with no right of reimbursement from other properties that received or will receive *119 a direct benefit. It is impermissible to saddle plaintiffs with the full costs of the improvements demanded by the Borough where other property owners receive a special benefit. Longridge Builders, Inc. v. Planning Bd. of Princeton Tp., 52 N.J. at 350, 245 A.2d 336.
We disagree with the Chancery Division judge's finding that no "special benefit" accrued to neighboring properties. The term "special benefit" which frequently appears in our decisions is apparently derived from N.J.S.A. 40:56-27. That statute provides that assessments for local improvements must be "in proportion to and not in excess of the peculiar benefit, advantage or increase in value" received by the affected properties. Ibid. The term "special benefit" has been broadly defined as follows.
"Whether the property has been specially benefitted by an improvement is generally regarded as a question of fact, depending on the circumstances in each case, for the determination of the proper tribunal."
* * * * * * * *
"`Benefit' is the increment of value to land affected by improvement. It represents the difference between the market value of the lands before the improvement and the market value of the land immediately after the improvement."
Ridgewood Country Club v. Borough of Paramus, 55 N.J. 62, 68, 259 A.2d 218 (1969), quoting In re Public Service Elec. and Gas Co., 18 N.J. Super. 357, 363-65, 87 A.2d 344 (App.Div. 1952) (citation omitted). See also McNally v. Tp. of Teaneck, 132 N.J. Super. 442, 450, 334 A.2d 67 (Law Div. 1975), modified, 75 N.J. 33, 379 A.2d 446 (1977). The phrase merely refers to the "constitutional imperative that the amount of the assessment be calculated in relation to the value of the... benefit and that it not exceed that value." McNally v. Tp. of Teaneck, 132 N.J. Super. at 450, 334 A.2d 67; see also McQueen v. Town of West New York, 56 N.J. 18, 23-24, 264 A.2d 210 (1970); In re Public Service Elec. and Gas Co., 18 N.J. Super. at 363, 87 A.2d 344. The adjective "special" merely means that the enhancement of the value of the properties caused by the improvement *120 is "beyond and in addition to that general benefit which may be enjoyed by all of the property owners and residents of the municipality." McNally v. Tp. of Teaneck, 132 N.J. Super. at 450, 334 A.2d 67.
Our Supreme Court's decision in Ridgewood Country Club v. Borough of Paramus is illustrative of the broad expanse of this definition. There, the plaintiff contended that it could not be assessed its pro rata share of installation of a sewer system because as the operator of a golf club, it had no use for this improvement and would not benefit from it. Id., 55 N.J. at 68, 259 A.2d 218. In rejecting this argument, the Court observed:
The fact that a landowner has no present, immediate use for the improvement is ... immaterial, so long as the use of the improvement is accessible and available to the land sought to be assessed for any use to which the property may legitimately be put. The ascertainment of whether a property has been benefited is not to be confined to evaluating the effect of the improvement on the particular use to which that property is being put at the time of the assessment. Rather, the test is whether its value was increased for any legitimated use to which it is or may be put.
Id. at 68-69, 259 A.2d 218.
We applied these principles in a different context in Baltica Const. v. Planning Bd. Plaintiff was granted a ten-lot subdivision approval subject to the condition that it bear the entire cost of installing an off-site water line. The planning board directed that a 16-inch line be installed, although an 8-inch line would have sufficed to service the proposed subdivision. The Law Division dismissed plaintiff's complaint on the basis that any benefits accruing to properties abutting the water line were "too speculative to allow a determination that plaintiff [was] entitled to a reimbursement." Baltica Const. v. Planning Bd., 222 N.J. Super. at 434, 537 A.2d 319. We reversed, concluding that there were "clear benefits accruing" to neighboring properties. Ibid. In our opinion, we emphasized that homeowners abutting the line "now [had] the option of tying into" the utility and that vacant landowners could "develop their land and connect to the line without incurring the expense of either *121 installing wells or constructing a water line themselves." Id. at 434-35, 537 A.2d 319.
We recognize that the facts here differ from those present in Ridgewood Country Club and Baltica. We also acknowledge that the costs which plaintiffs may be compelled to bear are not limited to the "special" or "peculiar" benefit which their properties received by reason of the improvements. Divan Builders v. Planning Bd. Tp. of Wayne, 66 N.J. at 600-601, 334 A.2d 30. "Consideration may also be given to the fact that the need for the off-site improvement was created by the proposed [construction]." Id. at 601, 334 A.2d 30. The fact remains, however, that the neighboring properties received a substantial benefit from the improvements installed by plaintiffs. These improvements provide sufficient capacity to service future development along Jefferson Avenue. The Chancery Division judge's finding to the contrary is not supported by substantial credible evidence present in the record. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974).
In dealing with questions of cost allocation, our Supreme Court has stressed the need for an ordinance containing standards which insure, to the greatest extent practicable, that the costs of improvement fall equitably upon those who are similarly situated and in just proportion to benefits conferred. See, e.g., Deerfield Estates, Inc. v. Tp. of East Brunswick, 60 N.J. at 127, 286 A.2d 498; Longridge Builders, Inc. v. Planning Bd. of Princeton Tp., 52 N.J. at 351, 245 A.2d 336; Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. at 441-42, 147 A.2d 28. Here, however, we are faced with a fait accompli. Plaintiffs have already completed the improvements and the question is whether and how they are to be reimbursed. However, the parties are not without guidance. We have been advised that there is a cost allocation ordinance dealing with "developers" apparently in the context of conditions attaching to subdivision and site plan approval. It would appear that the standards and procedures contained in this ordinance can be used to effect an appropriate apportionment of costs. Because *122 the matter must be remanded to the Chancery Division, we need not further consider the nature and scope of plaintiffs' remedies.
One further matter must be addressed before leaving the subject. As we noted earlier, plaintiffs were required to pave and make road improvements on a portion of Jefferson Avenue. In Amato v. Randolph Tp. Planning Bd., 188 N.J. Super. 439, 457 A.2d 1188 (App.Div. 1982), we said that "the pro-rata cost sharing scheme provided [by] [N.J.S.A. 40:55D-42] ... in respect of street improvements does not apply to a street contiguous to the subdivision and upon which it abuts." Id. at 450-51, 457 A.2d 1188. That principle was recently modified to some extent in Cameron & Cameron, Inc. v. Planning Bd. of Warren Tp., 250 N.J. Super. 296, 306-07, 593 A.2d 1250 (App. Div. 1991). On remand, additional findings of fact may well be required concerning this subject.

III.
Finally, we reject the Chancery Division judge's conclusion that plaintiffs had constructive notice of their obligation to bear the full cost of making the specified improvements. A fair reading of the resolution authorizing the auction and the report of the Borough engineer does not support this finding. To be sure, plaintiffs knew, or should have known, that the Borough would not assume the responsibility of improving the road and installing water and sewer lines. In our view, plaintiffs could nevertheless assume that the cost of making these improvements would be borne by them and the neighboring properties that benefitted thereby. As we have emphasized, long before the enactment of N.J.S.A. 40:55D-42, it was well settled that such costs were to be shared equitably by those properties receiving a special benefit from the installation of the improvements. Neither the Borough's resolution nor the engineer's report negated this thesis.

*123 IV.
Prior to trial, the Borough advanced several defenses which raised issues that were not resolved by the Chancery Division. The merits of these defenses must be addressed on remand.
The judgment is reversed and the matter is remanded for further proceedings.