276 N.J. Super. 519 (1994)
648 A.2d 482
F & W ASSOCIATES, A PARTNERSHIP, FERRUGGIA ASSOCIATES, A PARTNERSHIP, AND CHASBOB, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS,
v.
THE COUNTY OF SOMERSET, SOMERSET COUNTY PLANNING BOARD, THE TOWNSHIP OF WARREN, AND WARREN TOWNSHIP PLANNING BOARD, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 19, 1994.
Decided October 17, 1994.
*520 Before Judges PETRELLA, HAVEY and CUFF.
Erwin C. Schnitzer, attorney for appellants (Mr. Schnitzer, on the brief).
Welaj, Miller & Robertson, attorneys for respondent County of Somerset (Thomas C. Miller, on the brief).
DeMarco & Lore, attorneys for respondent Somerset County Planning Board (John M. Lore, on the brief).
Bivona, Cohen, Kunzman, Coley, Yospin, Bernstein & DiFrancesco, P.A., attorneys for respondents Township of Warren and *521 Warren Township Planning Board (John E. Coley, Jr., of counsel; Margaret M. Monaco and Judith A. Babinski, on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
In this zoning case, plaintiffs challenge a traffic impact fee assessed by defendants Somerset County Planning Board, the Township of Warren and Warren Township Planning Board as a condition to plaintiffs' subdivision and site-plan approvals. Plaintiffs argue that: (1) under the County Planning Act, N.J.S.A. 40:27-1 to -8, the County Planning Board had no authority to assess the impact fees; (2) the New Jersey Transportation Development District Act (TDDA), N.J.S.A. 27:1C-1 to -18, is the exclusive means by which traffic impact fees can be assessed against developers; and (3) the assessment against plaintiffs fails to meet "established standards of constitutionality for the imposition and allocation of impact fees" as defined by our Supreme Court. We affirm.
Plaintiffs own a 40.4 acre tract of land in Warren Township. Along its southerly boarder, the tract abuts Mountain Boulevard, a county road. In the 1980's, the property was subdivided into two separate tracts. On the parcel fronting Mountain Boulevard plaintiffs proposed an office condominium complex. On the rear portion, known as the Windermere Development, plaintiffs proposed a subdivision of 117 single-family homes and 60 "Mount Laurel"[1] rental units. The subdivision provided for two access roads from the residential development to Mountain Boulevard.
On June 13, 1988, defendant Township of Warren Planning Board granted preliminary major subdivision approval for the Windermere development. The approving resolution "specifically *522 reserved" several issues, including the "necessity for off tract traffic improvements" as well as the computation of plaintiffs' "fair share contribution for future traffic improvements on Mountain Boulevard[.]" The approval was also conditioned upon plaintiffs obtaining approval from the County Planning Board.
On June 28, 1988, plaintiffs, together with other developers having proposed developments, met with representatives of the Township and County Planning Boards to discuss the traffic and storm water implications of their proposed developments. The applicants, including plaintiffs, agreed to pay for a "joint traffic study." Garmen Associates was hired to conduct the study.
The Garmen study recommended that the Township of Warren establish a Transportation Improvement District (TID) in order to fund roadway improvements on a unified basis. The study also devised a formula for calculating each development's pro-rata share of the cost of the improvements; the formula was based on the number of "trips" generated by that development.
The Garmen study was adopted by the Warren Township Planning Board as part of the Township's Master Plan. Also, in October 1990, Warren Township enacted an ordinance creating the recommended TID. The TID ordinance set forth a formula for computing each developer's "pro rata share of [development] impact fees," and required developers to enter into fee agreements with the Township (and with Somerset County to the extent that egress from or ingress upon a county road is implicated).
In February 1991, plaintiffs, the County and Township of Warren entered into an agreement under which the County Planning Board determined that plaintiffs' pro-rata contribution for off-tract improvements associated with the Windermere development was $244,774, less Mount Laurel credits. Pursuant to the agreement, but under protest, plaintiffs posted, by cash or letter of credit, approximately $137,000.
Plaintiffs also received site plan approval from the Township Planning Board for the construction of the office complex on the *523 tract fronting on Mountain Boulevard. The approving resolution provides that plaintiffs shall enter into an agreement with the County regarding "improvements to be made on ... Mountain Boulevard." The County Planning Board approved the site plan on April 6, 1992, and determined, in accordance with the Township's TID ordinance, that the project's contribution to the Mountain Boulevard corridor study totalled $63,480. Plaintiffs also paid this assessment under protest.

I
Plaintiffs argue that under the County Planning Act, N.J.S.A. 40:27-1 to -8, the County Planning Board had no jurisdiction to impose the traffic impact fees. Plaintiffs point out, and correctly so, that there is no express authority under the Act for the County Planning Board to impose assessments for off-tract improvements. The County defendants counter this point by noting that in Squires Gate, Inc. v. County of Monmouth, 247 N.J. Super. 1, 588 A.2d 824 (App.Div. 1991), the court held that despite the absence of express authority under the Act, the County Planning Board had the implied authority to assess for off-tract improvements for the reasons expressed in Divan Builders, Inc. v. Planning Bd., 66 N.J. 582, 334 A.2d 30 (1975), namely that it is "more fair for the developer to bear the expense of an improvement which benefits it directly rather than placing the burden on the community at large." Squires Gate, 247 N.J. Super. at 7, 334 A.2d 30.
We need not address the issue concerning the County Planning Board's statutory jurisdiction under the County Planning Act, nor do we express our agreement or disagreement with the Squires Gate holding that county planning boards have an inherent power to impose off-tract improvement assessments.[2] Here, despite the *524 fact that the County Planning Board computed the assessment against plaintiffs, the assessment was made in accordance with the municipal TID ordinance. Further, the Warren Township Planning Board's subdivision approval was conditioned upon plaintiffs' payment of their "fair share contribution for future traffic improvements on Mountain Boulevard[.]" Moreover, the Township was a party to the joint agreement which fixed plaintiffs' pro-rata share based on its TID ordinance and the Garmen study. Therefore, the Township and its Planning Board had the independent power to impose the traffic fees in accordance with the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136. That power is derived from N.J.S.A. 40:55D-42, which provides in pertinent part:
The governing body may by ordinance adopt regulations requiring a developer, as a condition for approval of a subdivision or site plan, to pay its pro-rata share of the cost of providing only reasonable and necessary street improvements and water, sewerage and drainage facilities, and easements therefor, located outside the property limits of the subdivision or development but necessitated or required by construction or improvements within such subdivision or development.
Warren Township's TID ordinance provides the requisite regulatory standards to impose the assessment as a condition to plaintiffs' approvals.

II
Alternatively, plaintiffs argue that, notwithstanding the Township's statutory power to assess for off-tract improvements under N.J.S.A. 40:55D-42, it may not do so by imposing traffic impact fees because the New Jersey Transportation Development District Act (TDDA), N.J.S.A. 27:1C-1 to -18, is the exclusive statutory authority for imposing such fees.
*525 The TDDA permits counties to establish "transportation development districts" designed to assess fees against developers in order to pay for transportation improvements necessitated by increased development. N.J.S.A. 27:1C-2c; N.J.S.A. 27:1C-3. The Act provides a mechanism by which the county obtains approval from the Commissioner of the Department of Transportation to create a transportation development district. N.J.S.A. 27:1C-4 and -5. Upon the Commissioner's approval and the drafting of plans for the operation and financing of the district, the county may adopt a district transportation improvement plan, and assess and collect development fees on developments within the district. N.J.S.A. 27:2C-7a. The fees are to be "reasonably related to the added traffic growth attributable to the development," and the maximum fee "shall not exceed the property owner's `fair share' of such improvement costs." N.J.S.A. 27:1C-7h. Finally, the governing body of a municipality may petition the county to initiate an application for the designation of a transportation development district under the Act. N.J.S.A. 27-1C-15.[3]
Plaintiffs argued before Judge Coleman in the Law Division that the TDDA "preempt[s] the municipalities" from imposing such fees, because "you can't have all the municipalities in the State of New Jersey enacting their own small TID districts within the municipality to circumvent the [TDDA] law enacted by the State. That would be utter chaos."
Judge Coleman properly rejected plaintiffs' exclusivity argument. The TDDA must be read sensibly and, since the Act and the MLUL share a common purpose (control of traffic), they *526 should be harmonized, not read in conflict. Miller v. Passaic Valley Water Comm'n, 259 N.J. Super. 1, 12, 611 A.2d 128 (App. Div.), certif. denied, 130 N.J. 601, 617 A.2d 1222 (1992); D.I.A.L., Inc. v. New Jersey Dep't of Community Affairs, 254 N.J. Super. 426, 439, 603 A.2d 967 (App.Div. 1992). The TDDA's statutory scheme is not so pervasive that it precludes coexistent municipal power to assess traffic impact fees. The TDDA focuses on the "explosive growth in certain regions, often along State highway routes...." N.J.S.A. 27:1C-2a. Thus, the Act is a unique response to special conditions not necessarily present in all areas of the State; it does not pretend to encompass every pocket of traffic generated, for example, by a modest subdivision development or site plan placed before a local planning board. In such cases, the off-tract assessment mechanism, in the form of a traffic impact fee or otherwise, authorized by N.J.S.A. 40:55D-42 and implemented by municipal ordinance, provides the municipal board with the appropriate means to address local conditions and special vehicular problems associated with the particular development before it.
Also, as Judge Coleman properly noted, the TDDA does not speak in mandatory terms. The Act provides that the county "may ... apply to the commissioner for the designation ... of a transportation development district within the boundaries of the county." N.J.S.A. 27:1C-4a (emphasis added). See also N.J.S.A. 27:1C-6a; N.J.S.A. 27:1C-7a. "`May' is a permissive and not an imperative verb which is to be given its natural and ordinary meaning, barring a clear contextual indication of a different usage." Leeds v. Harrison, 9 N.J. 202, 213, 87 A.2d 713 (1952). See also Diodato v. Camden Cty. Park Comm'n, 136 N.J. Super. 324, 327, 346 A.2d 100 (App.Div. 1975). Nothing in the TDDA compels a county to adopt a transportation development district. It is illogical to conclude that if the county does not, a municipality is left without the power to devise such an assessment-fee scheme pursuant to its express power under the MLUL. Indeed, the provisions of the TDDA suggest a contrary view. The Act expressly states that "[t]he provisions of this act shall not be construed as affecting municipal reviews and approvals of proposed *527 developments under the provisions of the "Municipal Land Use Law[.]" N.J.S.A. 27:1C-16c. This legislative declaration makes it abundantly clear that the Act was not intended to provide the exclusive means by which traffic impact fees may be assessed against developments.

III
Plaintiffs also argue that the Township's TID ordinance and the assessment are "ultra vires" and "unconstitutional" because: (1) the district encompassed within the ordinance is not a "related and common area," N.J.S.A. 40:55D-42, and thus the "but for" nexus required by the statute cannot be established on a "per development basis"; (2) the need for the off-tract improvements "cannot be laid at the door" of individual developments because existing and future growths throughout the Township will have an equal if not greater impact on major roads, including Mountain Boulevard; (3) the ordinance unlawfully allocates the cost of future public projects based on their anticipated impact; and (4) the ordinance generally fails to consider road users outside the district or proposed improvements paid for by the general public. We reject the arguments.
The MLUL does not expressly preclude the use of a "trip generation" methodology as employed by the Garmen study and adopted by the Township's TID ordinance. Indeed, the Act is silent as to how a municipality, by ordinance, may devise "reasonable standards" by which a developer's pro-rata share of off-tract costs is to be computed. N.J.S.A. 40:55D-42. Thus, the Legislature reposed in the governing body discretion in tailoring a methodology which is most sensitive to local conditions peculiar to the community in question.
The municipality's discretion, however, is circumscribed. The developer's pro-rata share must be "necessitated or required by construction or improvements within such subdivision or development." N.J.S.A. 40:55D-42. The statute is a codification of pre-MLUL cases which focused on the "rational nexus" between the *528 needs created by, and benefits conferred upon, the subdivision and the cost of the off-tract improvements. Longridge Builders, Inc. v. Planning Bd., 52 N.J. 348, 350, 245 A.2d 336 (1968); Divan Builders, 66 N.J. at 598, 334 A.2d 30.
Post-MLUL cases have embraced this "rational nexus" requirement. See New Jersey Builders Ass'n v. Mayor & Tp. Comm., 108 N.J. 223, 237, 528 A.2d 555 (1987) (a municipality's authority to charge developers is limited to "improvements the need for which arose as a direct consequence of the particular subdivision or development under review"); Baltica Constr. Co. v. Planning Bd., 222 N.J. Super. 428, 434, 537 A.2d 319 (App.Div. 1988) ("in determining a developer's pro-rata share, the [planning] board may consider the fact that but for the subdivision, the improvement may not have been installed at all"). The "nexus" requirement "is grounded on considerations of fundamental fairness and constitutional doctrine," mandating "equality of treatment." Vrabel v. Mayor & Council, 253 N.J. Super. 109, 118, 601 A.2d 229 (App.Div. 1992). The requirement achieves two ends. It ensures that a developer pays for improvements that are a "direct consequence" of the development, and protects a developer from "paying a disproportionate share of the cost of improvements that also benefit other persons." Holmdel Builders Ass'n v. Township of Holmdel, 121 N.J. 550, 571, 583 A.2d 277 (1990). Thus, whatever methodology is applied by a municipality, it must satisfy the "rational nexus" and "equality of treatment" criteria.
The problem with plaintiffs' multi-prong challenge to the Township's ordinance and assessment is that it assumes that a causal nexus between the necessity for off-tract improvements and the development must be measured with precision. It is true that our Supreme Court in New Jersey Builders Ass'n, 108 N.J. at 237, 528 A.2d 555, required a showing that the necessity for the improvement is a "direct consequence" of the development. However, land-use principles cannot be applied with exactitude. It cannot be seriously argued that a municipality must compute with precision to what extent improvements to an off-tract road network are *529 a "direct consequence" of a residential or office development. What must be demonstrated is a "rational" nexus, not mathematical certainty. For example, the assessment should not be invalidated simply because there may be a residual benefit conferred to the general public in its use of the off-tract road improvement. An assessment is subject to challenge only if the developer is required to pay a "disproportionate share of the cost of improvements that also benefit other persons." Holmdel, 121 N.J. at 571, 583 A.2d 277 (emphasis added). The methodology employed by the ordinance and the actual computation of the assessment against the developer are subject to the arbitrary and capricious standard. See 515 Assocs. v. City of Newark, 132 N.J. 180, 185-86, 623 A.2d 1366 (1993). The question therefore is whether the TID ordinance and assessment before us fall short of that standard.
We agree with Judge Coleman that the Township's ordinance satisfies the "rational nexus" requirement and that the assessment against plaintiffs is fully sustainable. The ordinance was adopted only after a comprehensive study (the Garmen study) of such factors as existing road facilities, current zoning, projected population growth, and existing commercial uses in the area. The study devised a volume/capacity ratio, measuring the demand volume and Mountain Boulevard's capacity. Based on projected full development of potential residential, retail and office use, the study adopted a vehicle "trip generation" methodology and from this model, predicted incremental traffic impact resulting from future development of land. The study estimated how much extra traffic would be generated by each development in the target area (Mountain Boulevard and surrounding roadways). The estimates were grounded on industrial standards, observations and empirical data obtained from traffic counts. The study then suggested what roadway improvements would be needed to accommodate the increased demands, and estimated the cost of those improvements. Plaintiffs challenge none of this methodology used in the Garmen study.
*530 The Township's TID ordinance adopts the results of the exacting Garmen study and incorporates Garmen's formula for calculating each developer's share of the cost of the needed off-tract improvements. The ordinance authorizes traffic impact fees according to the formula included in the Township's Master Plan and developed by the Garmen study. The express purpose of the fees is to "satisfy the developer's proportionate and pro-rat[a] contribution to the cost of reasonable and necessary off-tract roadway improvements necessitated by new development ... within... an established" district. The "data" upon which the fees are calculated would be "adjusted" as conditions changed. The ordinance exempts a developer from the fee if the development's off-tract impact is "negligible" or that the development would not benefit from the highway improvements. It is undisputed that the assessment against plaintiffs was computed in accordance with the Garmen study and standards of the Township ordinance. In short, the Township engaged in a rigorous process designed to achieve a fair allocation of increased traffic costs. Plaintiffs' conclusory objections to the assessment are unavailing.
New Jersey Builders Ass'n, on which plaintiffs rely, is clearly distinguishable. There, the Township adopted an extensive roadway improvement program involving improvements to twenty-two township roads, seven county roads, bridges, intersections and parking facilities. It devised a mechanism for allocating the cost of the program between the Township, its residents and developers. 108 N.J. at 225, 528 A.2d 555. Following the premise that all new development contributes to the need of township-wide road improvements, the ordinance required developers to contribute their pro-rata share of the cost of the plan, calculating the share according to "trip generation" forecasts designed to predict how much extra traffic would be generated by new developments collectively. Id. at 225, 528 A.2d 555. The Court invalidated the ordinance because the formula made no attempt to calculate the traffic impact attributable to each individual development. Id. at 237, 528 A.2d 555. Notably, however, it added the following footnote:

*531 We add one important qualification. By our decision we do not purport to determine the limits of specific applications of N.J.S.A. 40:55D-42, nor do we exclude its possible application to a street, water, sewerage, or drainage facility affecting all or substantially all of a municipality if the direct causal relationship between the development and the need for the improvement is demonstrated.
[Id. at 237, n. 5, 528 A.2d 555.]
Here, unlike New Jersey Builders Ass'n, the TID ordinance focuses on a discrete area of Warren Township, not the projected traffic needs of the entire municipality. Moreover, as stated, the ordinance satisfies the "rational nexus" requirement by calculating the fees based on the impact of each development to that discrete area.
Affirmed.
NOTES
[1] Southern Burlington Cty. N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975); Southern Burlington Cty. N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983).
[2] Plaintiffs also note that the County Planning Board's jurisdiction extends only to the review of subdivisions "affecting county road or drainage facilities...." N.J.S.A. 40:27-6.2. See also N.J.S.A. 40:27-6.6 (providing for similar review of "site plans for land development along county roads or affecting county drainage facilities"), and argue that the Act does not apply because their development does not abut a county road. We also need not address this issue, since we conclude that the assessment was imposed pursuant to N.J.S.A. 40:55D-42, not N.J.S.A. 40:27-6.2 or -6.6.
[3] On January 11, 1994, a bill was introduced in the New Jersey Assembly that would permit municipalities to impose impact fees, including fees related to transportation costs, under the rubric of a "capital improvement program," the mechanics of which are specified in the bill. A. 980, 206th Leg., 1st Sess. 1994 (introduced January 11, 1994 as the "Municipal Development Impact Fee Authorization Act"). The bill expressly acknowledges that municipalities already have the power to levy fees under the "less comprehensive" mechanism of N.J.S.A. 40:55D-42. See Sponsor's Statement. The bill is pending in the Assembly Committee on Local Government.